## THE LAND GROUP, INC. *v.* CARL J. PALMIERI, TRUSTEE, ET AL.
### (AC 30741)

Flynn, C. J., and Gruendel and Sullivan, Js.*

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 20—officially released August 3, 2010

*Christopher C. Vaugh*, for the appellant (plaintiff).

*Allan M. Cane*, for the appellees (defendants).

*Opinion*

SULLIVAN, J. The plaintiff, The Land Group, Inc., appeals from the judgment of the trial court in favor of the defendants, Carl J. Palmieri, as trustee and in his individual capacity, Frank Palmieri, as trustee and in his individual capacity, Mary Gai,[1] Florence Palmieri and Marie Palmieri, executrix of the estate of Vincent Palmieri. The court found that the defendants did not breach the parties' contract for the purchase and sale of the real estate at issue. The plaintiff, however, did breach the contract, and, therefore, the defendants were entitled to liquidated damages and attorney's fees. The plaintiff claims that the court improperly held that (1) the contract required the plaintiff to pursue zoning permits and approvals with due diligence, (2) the plaintiff breached the contract, (3) the defendants had the right to terminate the contract, (4) the defendants did not anticipatorily breach the contract, (5) the defendants did not commit a breach of contract, (6) article two of the contract should be interpreted in an overall restrictive manner, (7) the defendants prevailed on the first count of their counterclaim, (8) the plaintiff was not entitled to attorney's fees for prevailing on the third count of the defendants' counterclaim and in a separate action brought by the defendants, and (9) the award of attorney's fees to the defendants was reasonable.

---

[1] Gai was an individual owner but was authorized only to act in this transaction in her capacity as the recognized real estate agent. The contract lists Gai as the listing and selling broker and provides that the buyer will use Gai as the listing broker for sales of any units constructed on the subject property.

The plaintiff instituted a three count complaint against the defendants, the record owners of a parcel of land in Westport, alleging anticipatory breach of the contract, breach of contract and breach of the implied covenant of good faith and fair dealing.

The following facts are relevant to the resolution of the appeal. On April 8, 2005, the plaintiff and the defendants entered into a contract for the sale of real property owned by the defendants. They agreed that the plaintiff would pay a purchase price of $1.6 million, with a $50,000 deposit paid at signing, of which $25,000 was released immediately to the defendants and the remainder held in escrow. The contract provided that the purchase price would be based on the plaintiff receiving the town approval for the building of between thirteen and sixteen condominium units. If fewer than thirteen units were approved, the purchase price would be reduced by $125,000 per unit fewer than thirteen units, and if greater than sixteen units were approved, the purchase price would be increased by $125,000 per unit in excess of sixteen units. The court found that the parties were aware that the applicable zoning regulations only permitted five units to be built on the subject property and that any changes to the zoning regulations needed to be approved by the local zoning authority. The contract required the plaintiff to pursue the required zoning approvals and gave the plaintiff ninety days to do so, subject to six month extensions at the discretion of the defendants.

Upon expiration of the initial ninety day period, the plaintiff had not yet obtained the necessary approvals, nor did it attempt to terminate the contract; rather, the plaintiff indicated its willingness to proceed. The plaintiff also released to the defendants the remaining $25,000 from escrow. Satisfied that the plaintiff was proceeding in good faith, the defendants approved a

six month extension, with a new closing date of March 23, 2006.

The plaintiff intended to pursue zoning approval for the construction of affordable housing on the property and began to monitor the progress of another application for zoning approval of affordable housing at a nearby site. The other application was denied, but the plaintiff nonetheless decided to pursue that option on the subject property. The court found that the plaintiff had commissioned an updated survey and some architectural drawings and performed some other minor activities to prepare for seeking the necessary zoning approvals. The plaintiff did not, however, file an application with the zoning authority, a clear prerequisite to achieving zoning approval.

At a meeting between a representative of the plaintiff and the defendants in February, the defendants' representative expressed dissatisfaction with the progress made by the plaintiff toward obtaining zoning approval for the site. The plaintiff offered an up-front payment of $625,000 toward the purchase price, which the defendants rejected. In February, the plaintiff notified the defendants that it was considering pursuing an application for affordable housing, and then, on March 13, 2006, the plaintiff notified the defendants that it would pursue the affordable housing strategy. On March 15, 2006, eight days before the new closing date, the defendants' attorney notified the plaintiff that the defendants immediately were terminating the contract and would seek other potential buyers.

The contract also provided a license for the plaintiff to store equipment on the subject property. On April 20, 2006, the defendants gave notice to the plaintiff that its license was revoked, and they requested that the plaintiff remove its personal property. When the plaintiff refused to do so, the defendants brought an entry

and detainer action in the Superior Court. The action was dismissed without prejudice as procedurally improper.

## I

The plaintiff first claims that the court incorrectly interpreted the contract by holding that the contingency provision was both a condition and a contractual promise. The court held that "[t]he duty to pursue the zoning approvals was a promise and the duty to do so with 'due diligence' was both a promise and a condition of obtaining any additional extension of the closing date. . . . The effect of the 'due diligence' condition was to induce the [plaintiff] to move promptly to obtain the necessary approvals while giving the [defendants] the right to terminate the agreement at the end of any six month extension if the [plaintiff] failed to do so." (Citation omitted.) The plaintiff argues that the relevant language constitutes a mere condition, the fulfillment of which would have given it the right to enforce the contract, but which imposed no affirmative duty. We disagree.

"We begin by setting forth our standard of review. The standard of review for the issue of contract interpretation is well established. When, as here, there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Accordingly, our review is plenary. . . . The reviewing court must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Genua* v. *Logan*, 118 Conn. App. 270, 273–74, 982 A.2d 1125 (2009).

Contract language must be given its plain and ordinary meaning. Article two provides in relevant part:

"The [plaintiff] shall, at its sole expense, pursue approvals and obtain permits for the construction of a minimum of (13) condominium units at the Real Property. The [plaintiff] shall pursue the approvals and permits with due diligence." The court considered that, in light of the plaintiff's position as a developer and the defendants' desire to receive the maximum dollar amount for the sale, "the pursuit of a change in the zoning regulations was clearly an essential part of the bargain [and the] duty was logically assigned to the [plaintiff]." The court also considered that "shall" modified "pursue," which this court agrees makes the pursuit of approvals a mandatory provision of the contract.

The plaintiff argues that a reasonable interpretation of the contract would have made the pursuit of the zoning approvals a condition which, if not fulfilled, would give it the option to terminate the contract and forfeit the $50,000 deposit. The plaintiff's interpretation is correct to the extent that if it had pursued the approvals *unsuccessfully*, it would have had the option to terminate the contract. The plaintiff ignores, however, the unambiguous use of the word "shall," as noted by the court, to modify its duty to pursue the zoning approvals. The ultimate price of the land would be determined by how many units were approved to be built, and if the contract gave the plaintiff the option to do nothing to pursue those approvals, without relieving the defendants of their obligation to sell the land, the plaintiff could force a significant reduction in the price by simply doing nothing. Indeed, in 2007, the plaintiff attempted to close the sale by tendering a check for $550,000[2] to the defendants, based on valuing the five units that could have been built without any change

---

[2] The plaintiff explained in an accompanying note that the $550,000 figure was reached by multiplying the number of units by $125,000 and subtracting the $50,000 deposit. The court noted that the figure was mathematically incorrect but that the error did not affect the court's rationale.

in zoning. According to the plaintiff's reasoning, it could fail to pursue any approvals and then, at the end of the time allowed for such approvals, it could either terminate the contract or require performance by the defendants. We disagree. The plaintiff had an obligation to pursue the approvals with due diligence according to the plain terms of the contract and their reasonable interpretation.

## II

The plaintiff next claims that the court improperly held that the plaintiff breached the contract for failing to pursue the zoning approvals with due diligence and failing to submit such documentation to the defendants. This claim hues closely with the first claim. The plaintiff again argues that because the due diligence clause constituted a condition and not a promise, there can be no breach. The court properly determined that the plaintiff had the duty to pursue zoning approvals with due diligence. Our disposition of the first claim resolves the plaintiff's claim here.

## III

The plaintiff next claims that the court improperly held that the defendants had the right to terminate the contract on March 15, 2006. The plaintiff argues that because no contract provision allowed the defendants to terminate the contract prior to the closing date of March 23, 2006, the court improperly held that "the defendants' repudiation under the circumstances of this case was legitimate. In other words, the defendants not only had the right to refuse to extend the closing date but also had the right to terminate the contract." The defendants argue that prior to their own repudiation, the plaintiff had breached the contract, giving them, the nonbreaching party, the right to discharge prior to the time appointed for performance. We agree with the defendants.

"An anticipatory breach of contract occurs when the breaching party repudiates his duty before the time for performance has arrived. . . . Its effect is to allow the nonbreaching party to discharge his remaining duties of performance, and to initiate an action without having to await the time for performance. . . . The manifestation of intent not to render the agreed upon performance may be either verbal or nonverbal . . . and is largely a factual determination in each instance." (Citations omitted; internal quotation marks omitted.) *Pullman, Comley, Bradley & Reeves* v. *Tuck-It-Away, Bridgeport, Inc.*, 28 Conn. App. 460, 465, 611 A.2d 435, cert. denied, 223 Conn. 926, 614 A.2d 825 (1992). The Restatement (Second) of Contracts § 254 (1) states that "[a] party's duty to pay damages for total breach by repudiation is discharged if it appears after the breach that there would have been a total failure by the injured party to perform his return promise." 2 Restatement (Second), Contracts § 254, p. 290 (1981).

The court determined that on March 15, 2006, the plaintiff could not have possibly completed its obligations under the contract because the zoning approvals could not have been attained by the date set for closing, and, furthermore, the plaintiff had not pursued those approvals with due diligence. The contract did not include a "time is of the essence" clause, meaning that the plaintiff could have tendered performance at the date set for closing, despite the defendants' repudiation, but the plaintiff did not do so. Instead, the plaintiff waited an entire year before attempting to complete the transaction. In addition, the court found that the purchase price eventually tendered by the plaintiff did not conform to the terms of the contract. As a result of the court's conclusion that the plaintiff had breached the contract prior to the defendants' repudiation, it

properly concluded that the defendants were discharged from their duties under the contract, as memorialized in the March 15, 2006 letter to the plaintiff terminating the contract.

## IV

The plaintiff next claims that the court improperly concluded that the defendants did not anticipatorily breach the contract because the plaintiff demonstrated that it would have been able to perform had there been no repudiation. The court found as a matter of fact that the plaintiff could not have performed because it could not have "obtained all of the necessary zoning approvals within the time limited . . . ." The plaintiff argues that it could have tendered performance because it had an unconditional mortgage commitment for $5 million. We are not persuaded.

The question of whether the plaintiff could have tendered performance presents a question of fact. "We review the court's findings of fact under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Seligson* v. *Brower*, 109 Conn. App. 749, 753–54, 952 A.2d 1274 (2008).

In order to establish that the defendants anticipatorily breached the contract, the plaintiff must be able to show that it would have been able to perform its obligations on the date set for performance. The plaintiff argues that the testimony at trial of its president, George

Andrew Frank, established its ability to perform on the date set for performance because Frank testified to the existence of a mortgage commitment of $5 million. Although the court did not address that testimony, even if it had found the testimony credible, the sole ability to pay does not establish ability to perform under this contract.

There is no dispute that the contract provided for a purchase price based on the number of units approved for development. We have already upheld the court's determination that the plaintiff was obligated to pursue those approvals with due diligence. The court found, based on the testimony of the director of the Westport planning and zoning authority, that the necessary approvals would take at least forty-five to sixty days to process, thereby making it impossible for the plaintiff to perform by March 23, 2006. The court's findings are not clearly erroneous with respect to the inability of the plaintiff to perform on the date set for performance, and, therefore, we cannot conclude that the court improperly found that the defendants did not anticipatorily breach the contract.

V

The plaintiff next claims that the court improperly found that the defendants did not breach the contract when they failed to tender performance on March 23, 2006. The plaintiff argues, echoing its claims raised in parts III and IV of this opinion, that the court improperly held that the defendants legitimately terminated the contract on March 15, 2006, in anticipation of the plaintiff's inability to tender performance and due to the failure of the plaintiff to pursue the zoning approvals with due diligence. As we have already held, the court properly determined that the defendants legitimately terminated the contract, relieving them of the obligation

to tender performance. See *Pullman, Comley, Bradley & Reeves* v. *Tuck-It-Away, Bridgeport, Inc.*, supra, 28 Conn. App. 465.

## VI

The plaintiff next claims that the court improperly interpreted the term "due diligence" in an overly restrictive manner when it determined that the plaintiff breached the contract by failing to pursue the zoning approvals with due diligence. The plaintiff emphasizes that obtaining surveys and architectural drawings and its tracking of other zoning applications constituted due diligence within the meaning intended by the parties to the contract. The defendants argue that the court properly interpreted the term to mean "results, not preparations, [and] approvals, not application tracking or surveys." We agree with the defendants.

The court held that the term due diligence is not ambiguous, and the plaintiff agrees that the language of the contract was definitive. As noted in part I of this opinion, our standard of review is plenary concerning the interpretation of definitive language in the contract. *Genua* v. *Logan*, supra, 118 Conn. App. 273–74.

"Due diligence means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *Kubeck* v. *Foremost Foods Co.*, 190 Conn. 667, 672, 461 A.2d 1380 (1983). The court rejected the plaintiff's contention that obtaining a survey and tracking another application were reasonable means of diligently pursuing a zoning application. Even if the plaintiff is correct in arguing that the steps that it took were necessary parts of the zoning approval process, the steps were not *sufficient* to constitute due diligence. The purchase price depended on a successful zoning application, and the court, therefore, was correct

in concluding that due diligence under the circumstances required taking sufficient action to achieve results in an effort to close on the agreed upon date.

## VII

The plaintiff next claims that the court improperly awarded the defendants liquidated damages on the first count of their counterclaim, in which the defendants had requested recompense for the loss of rents and profits. The plaintiff argues that because the court held that the defendants were entitled only to liquidated damages, rather than actual damages that they requested in their counterclaim, it was improper to render judgment in the defendants' favor. The plaintiff raises this claim for the first time on appeal, and we, therefore, decline to afford it review. See, e.g., *Konigsberg* v. *Board of Aldermen*, 283 Conn. 553, 597 n.24, 930 A.2d 1 (2007) ("[a]s we have observed repeatedly, [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge" [internal quotation marks omitted]).

## VIII

The plaintiff next claims that the court improperly refused to award attorney's fees for its successful defense of the defendants' entry and detainer action and successful defense of the third count of their counterclaim. We disagree.

The contract provided that "in the event of any litigation brought to enforce any material provision of this Agreement, the prevailing party shall be entitled to recover its reasonable [attorney's] fees and court costs from the other party." In refusing to award the plaintiff attorney's fees, the court held that "[i]nasmuch as [the] plaintiff made no claim of setoff, nor was there any motion by the plaintiff to conform the pleadings to the

proof, no award is made to the plaintiff for the successful defense of the entry and detainer action or the third counterclaim in this action."

The plaintiff argues that its request for attorney's fees in its prayer for relief in the complaint sufficiently apprised the court that it sought attorney's fees. The plaintiff further argues that Practice Book § 10-54, which allows a defendant the right to plead any setoff against the plaintiff's claims, does not apply to the plaintiff here. The court did not cite Practice Book § 10-54 for its ruling, and, therefore, we need not decide whether Practice Book § 10-54 applies.

As a general proposition, a party must identify the basis for which it claims attorney's fees. See, e.g., *Hartford* v. *International Assn. of Firefighters, Local 760,* 49 Conn. App. 805, 818, 717 A.2d 258, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998). Although the plaintiff requested attorney's fees in its prayer for relief, it did not specify the basis on which the court could award them, either in the individual counts or in the prayer for relief. We further note that the third count of the defendants' counterclaim and the entry and detainer action may or may not have been covered by the language of the contract allowing for attorney's fees to the prevailing party in an action brought to enforce a material provision of the contract, but the court had no opportunity to rule on that issue because the plaintiff did not put the question before the court. We cannot now decide on appeal that the plaintiff is entitled to receive an award of attorney's fees that it never actually requested from the court, based on a contractual provision, the applicability of which the court made no determination.

IX

The plaintiff finally claims that the court abused its discretion in awarding $128,217.65 in attorney's fees to the defendants. We disagree.

We begin by setting forth the well established standard of review. "[T]he amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion." (Internal quotation marks omitted.) *Moasser* v. *Becker*, 107 Conn. App. 130, 139, 946 A.2d 230 (2008). "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 253, 828 A.2d 64 (2003).

"[T]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. . . . The courts may then adjust this lodestar calculation by other factors." (Internal quotation marks omitted.) *Ernst* v. *Deere & Co.*, 92 Conn. App. 572, 576, 886 A.2d 845 (2005). The court in the present case considered testimony by the attorneys on "their respective experience, length of practice, nature of their specialties in the practice of law, the hourly rates that they typically charged clients for their services and the time and effort they spent in representing their clients both pretrial and at trial." The plaintiff argues that the court did not sufficiently consider, nor have evidence to support, several factors found in rule 1.5 of the Rules of Professional Conduct concerning reasonable fees. The plaintiff does not cite any authority stating that a court must consider all of the factors of rule 1.5 when making an award of attorney's fees. The plaintiff has also not demonstrated that the court abused its discretion by considering the factors that it

did when making the determination that the fees charged were reasonable. In light of the factors it considered, the court properly determined that the number of hours and the hourly rate charged were justified. It, therefore, properly arrived at a final figure by multiplying the number of hours by the hourly rate.

The judgment is affirmed.

In this opinion the other judges concurred.