ANDY'S OIL SERVICE, INC. *v.* THOMAS HOBBS ET AL.
(AC 31730)

Gruendel, Robinson and Hennessy, Js.

Argued October 22—officially released December 28, 2010

*Derek V. Oatis*, for the appellants (defendant Michael Janiszewski et al.).

*Donald W. McGill*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The plaintiff, Andy's Oil Service, Inc., commenced this action against the defendants, Thomas Hobbs and Michael Janiszewski and Zife Krois (homeowners),[1] seeking to recover the costs of installing a heating and air conditioning system (system) in the homeowners' residence. The homeowners filed a cross complaint against Hobbs, alleging, inter alia, breach of contract. The trial court found in favor of the plaintiff as to its unjust enrichment claim against the homeowners, and in favor of Hobbs on the plaintiff's complaint and the homeowners' cross complaint. On appeal, the homeowners claim that the court improperly (1) permitted the plaintiff to recover on a theory of unjust enrichment because (a) the claim was barred by the Home Improvement Act (act), General Statutes § 20-418 et seq., or (b) in the alternative, the homeowners were not enriched unjustly, and (2) found that the homeowners had anticipatorily breached their contract with Hobbs, thereby

---

[1] Although Hobbs was a defendant at trial, he is not a party to this appeal.

allowing Hobbs to terminate the contract. We affirm the judgment of the trial court.

The following facts, as found by the court in its memorandum of decision, and procedural history are relevant to our resolution of this appeal. On June 8, 2004, the homeowners entered into a written contract with Hobbs, a general contractor, for construction of certain improvements to the homeowners' residence at 31 Hillside Road in Woodbury.[2] One of the improvements included installation of the system. Hobbs, at the request of Janiszewski, contacted Diane Restiva, the office manager for the plaintiff, in an effort to secure a subcontractor's bid for installation of the system. Sometime thereafter, Janiszewski provided the plaintiff with the installation specifications, and the plaintiff submitted a proposal, dated May 5, 2005, to install the system for $16,250.

After reviewing bids from other subcontractors, Janiszewski and Hobbs both agreed to accept the plaintiff's proposal. On May 11, 2005, Restiva went to the homeowners' residence to have Hobbs sign the proposal but was unsuccessful because Hobbs was not at the job site. Hobbs never signed the proposal. Despite never obtaining Hobbs' signature on the proposal, the plaintiff nevertheless proceeded with installation of the system, which continued through the first week of June, 2005.

During construction of the improvements, disagreement developed between Hobbs and the homeowners. In a letter dated May 16, 2005, Hobbs informed Janiszewski that he considered the contract terminated because Janiszewski had stated that he would not pay

---

[2] The contract provided that Hobbs would receive five progress payments as follows: (1) upon execution of the contract (deposit); (2) upon completion of the foundation; (3) upon completion of the rough framing, sheathing and roofing of the addition; (4) upon completion of mechanical and electrical roughing, exterior siding, insulation and drywall; and (5) upon total completion of the project.

Hobbs the final progress payment due under the contract. Janiszewski responded, by letter dated May 23, 2005, that Hobbs did not have a right to terminate the contract but that Janiszewski would allow him to terminate provided that he satisfied certain conditions. Hobbs thereafter performed no additional work at the residence, and Janiszewski hired another contractor to finish the construction.

After completely installing the system, the plaintiff attempted to obtain payment from both Hobbs and Janiszewski. Hobbs declined to pay, claiming that he never received payment for the installation from the homeowners and, moreover, that he never executed the plaintiff's proposal. Janiszewski also refused to pay, claiming that he had no legal obligation to the plaintiff.

The plaintiff filed an amended complaint seeking to recover the cost of installing the system. In relevant part, the complaint alleged that (1) Hobbs had breached an oral contract with the plaintiff or, in the alternative, had been unjustly enriched and (2) the homeowners had been unjustly enriched in the amount of $16,250 by their refusal to compensate the plaintiff for installation of the system. The homeowners filed an answer in which they denied the plaintiff's allegation and asserted the act as a special defense. The homeowners also filed a cross complaint against Hobbs, alleging, inter alia, breach of contract and seeking damages in the amount of $54,175.37. Hobbs filed an answer, in which he denied the allegations in both the plaintiff's complaint and the homeowners' cross complaint.

The matter was tried to the court on January 30, 2009. As to the plaintiff's claims against Hobbs, the court found in favor of Hobbs. The court determined that the plaintiff did not have a binding contractual agreement with Hobbs because he never signed the proposal. Furthermore, the court found that Hobbs had not been

unjustly enriched by the plaintiff's installation of the system because "Hobbs . . . received no payment from the [homeowners] covering the costs of the [system's] installation."

As to the plaintiff's claim of unjust enrichment against the homeowners, the court found in favor of the plaintiff. In reaching its decision, the court found that the act applied to the plaintiff but that the plaintiff had satisfied its burden of showing that the homeowners had asserted violations of the act in bad faith. Therefore, the court found that the plaintiff could recover from the homeowners notwithstanding the absence of any written agreement between the parties.

Finally, as to the homeowners' claim of breach of contract against Hobbs, the court found in favor of Hobbs. The court found that Janiszewski had committed an anticipatory breach when he declared that he had no intention of making the final progress payment when it became due under the contract. As a result, the court determined that Hobbs was entitled to terminate the contract without breach. Additional facts will be set forth as necessary.

I

On appeal, the homeowners first claim that the court improperly permitted the plaintiff to recover on a theory of unjust enrichment because the claim was barred by the act or, in the alternative, the homeowners were not enriched unjustly. To fully address the claims raised by the plaintiff, we must set forth several background principles of law.

To begin, unjust enrichment is a broad and flexible equitable doctrine and generally available as a remedy when no remedy is available pursuant to a contract. *Bolmer* v. *Kocet*, 6 Conn. App. 595, 612, 507 A.2d 129 (1986); *A & C Corp.* v. *Pernaselci*, 2 Conn. App. 264,

265, 477 A.2d 166 (1984). "The right of recovery for unjust enrichment is equitable, its basis being that in a given situation it is contrary to equity and good conscience for [one] to retain a benefit which has come to him at the expense of [another]." (Internal quotation marks omitted.) *National CSS, Inc.* v. *Stamford*, 195 Conn. 587, 597, 489 A.2d 1034 (1985). A court may award a plaintiff damages under the doctrine of unjust enrichment if the plaintiff can establish "(1) that the [defendant was] benefited, (2) that the [defendant] unjustly did not pay the [plaintiff] for the benefits, and (3) that the failure of payment was to the [plaintiff's] detriment." (Internal quotation marks omitted.) *Polverari* v. *Peatt*, 29 Conn. App. 191, 201, 614 A.2d 484, cert. denied, 224 Conn. 913, 617 A.2d 166 (1992). Although unjust enrichment is generally available as a remedy under the common law, "[t]here is no question that the legislature may abrogate the common law"; *Warner* v. *Leslie-Elliott Constructors, Inc.*, 194 Conn. 129, 133, 479 A.2d 231 (1984); and eliminate a plaintiff's right to pursue a claim for unjust enrichment. See *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 340, 576 A.2d 464 (1990).

The act is one such instance in which the legislature has elected to abrogate the common-law right to recover for unjust enrichment under certain circumstances. As our Supreme Court has found, the act "is a remedial statute that was enacted for the purpose of providing the public with a form of consumer protection against unscrupulous home improvement contractors. . . . The aim of the statute is to promote understanding on the part of consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services." (Citation omitted.) *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 231, 720 A.2d 235 (1998). Therefore, to advance this purpose, the act provides

that a home improvement contract is not enforceable against a homeowner, either by way of an action for breach of contract or for unjust enrichment, unless the contract complies with the mandatory writing requirements of General Statutes § 20-429 (a).[3] See, e.g., *A. Secondino & Son, Inc.* v. *LoRicco*, supra, 215 Conn. 340; *Barrett Builders* v. *Miller*, 215 Conn. 316, 322, 576 A.2d 455 (1990); *Laser Contracting, LLC* v. *Torrance Family Ltd. Partnership*, 108 Conn. App. 222, 226, 947 A.2d 989 (2008); *Dinnis* v. *Roberts*, 35 Conn. App. 253, 257, 644 A.2d 971, cert. denied, 231 Conn. 924, 648 A.2d 162 (1994).

Although the act generally prohibits a plaintiff from pursuing a claim for unjust enrichment on a home improvement contract if the act's requirements are not satisfied, proof of bad faith on the part of the homeowner is an exception to this restriction. *Dinnis* v. *Roberts*, supra, 35 Conn. App. 257. The bad faith exception precludes "the homeowner from hiding behind the protection of the act." (Internal quotation marks omitted.) Id., 258. "The central element giving rise to this exception is the recognition that to allow the homeowner who acted in bad faith to repudiate the contract and hide behind the act would be to allow him to benefit from his own wrong, and indeed encourage him to act thusly." (Internal quotation marks omitted.) Id., 257–58. "It is the burden of the party asserting the lack of good faith to establish its existence . . . ." (Internal quotation marks omitted.) *Lucien* v. *McCormick Construction, LLC*, 122 Conn. App. 295, 300, 998 A.2d 250 (2010).

[3] General Statutes § 20-429 (a) provides in relevant part: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) [i]s in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor and the contractor's registration number, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ."

In summary, at common law, a plaintiff is permitted to bring a cause of action against a homeowner, premised on a theory of unjust enrichment, for any benefits conferred on the homeowner that enrich him or her unjustly. The act, however, provides the homeowner with a defense, in certain circumstances, even if the homeowner has been unjustly enriched. Specifically, if a home improvement contract is involved, a plaintiff may not bring a claim for unjust enrichment against a homeowner unless the act's writing requirements have been satisfied. Notwithstanding the protection of the act, the plaintiff may nevertheless recover from the homeowner if the plaintiff shows that the homeowner asserted the protection of the act in bad faith. With this general backdrop in mind, we consider the homeowners' claims.

## A

The homeowners initially claim that the court improperly permitted the plaintiff to recover on a theory of unjust enrichment because the claim was barred by the act. The homeowners specifically argue that the court erred when it concluded that the plaintiff had established that the homeowners asserted violations of the act in bad faith. We conclude that the act does not apply under the facts of this case.

Before determining whether the court erred in applying the bad faith exception, as a threshold matter, we must first determine whether the act applies to the parties and transaction at issue. More specifically, we must determine whether the homeowners have a valid defense to the plaintiff's claim of unjust enrichment that the plaintiff and the homeowners did not enter into a contract that satisfies the requirements of § 20-429 (a). See *MJM Landscaping, Inc.* v. *Lorant*, 268 Conn. 429, 435–36, 845 A.2d 382 (2004). It is only if we answer this question in the affirmative that we must determine

whether the bad faith exception applies. See *Lucien* v. *McCormick Construction, LLC*, supra, 122 Conn. App. 299–300.

It is axiomatic that a reviewing court is "bound to accept the court's factual findings absent a showing that they are clearly erroneous in light of the evidence." *Prestige Management, LLC* v. *Auger*, 92 Conn. App. 521, 525, 886 A.2d 458 (2005). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definitive and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Inland Wetlands & Watercourses Agency* v. *Landmark Investment Group, Inc.*, 218 Conn. 703, 708, 590 A.2d 968 (1991).

Whether the act applies to the facts as found by the court, however, is a matter of statutory construction. *Meadows* v. *Higgins*, 249 Conn. 155, 162, 733 A.2d 172 (1999). "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Citation omitted; internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401, 920 A.2d 1000 (2007). "[W]e must determine whether the [trial] court's conclusions are legally and logically correct and are supported by the record." (Internal quotation marks omitted.) *Drain Doctor, Inc.* v. *Lyman*, 115 Conn. App. 457, 462, 973 A.2d 672 (2009).

Our decision as to whether the act applies under the particular facts of this case is informed by our Supreme Court's interpretation of the act in *Meadows* v. *Higgins*, supra, 249 Conn. 155. In *Meadows*, a subcontractor

sought to foreclose on a mechanic's lien that it had placed on the homeowners' property for painting and wallpapering services that the subcontractor had provided at the request of a general contractor. Id., 157–58. As a special defense, the homeowners asserted the protection of the act, specifically claiming that they had not entered into a contract with the subcontractor that satisfied the mandatory writing requirements of the act. Id., 158–59. The case was referred to an attorney trial referee, who found that "[t]here was no document or writing setting forth the terms of the agreement pursuant to which the [subcontractor] provided services and materials to the [homeowners]." (Internal quotation marks omitted.) Id., 158. Nevertheless, the trial court held that the subcontractor could foreclose on the mechanic's lien because "the provisions of the [act] do not apply to the transaction between the [subcontractor] and the [homeowners] because the [subcontractor] was acting as a subcontractor to . . . a general contractor . . . ." Id., 159–60. The homeowners appealed to this court, which affirmed the trial court's interpretation. Id., 160–61.

After engaging in a thorough analysis of the act, our Supreme Court agreed with the trial court and interpreted the act not to include subcontractors. Id., 168 ("a subcontractor is not included within the purview of the act"). In reaching this interpretation, the court reasoned that "the act was not intended to apply to the transaction between a subcontractor and the homeowner, because in such circumstances there is no 'home improvement contract' as that term is defined by the act. See General Statutes § 20-419 (5)." *Meadows* v. *Higgins*, supra, 249 Conn. 166. Furthermore, the court found support for its position from "all of the cases to which this court and the Appellate Court have [previously] applied the act . . . ." Id. As the court pointed out, in all of those previous cases, "the relationship that

generated the dispute was that of *contractor* and *owner*, and in each, the contractor was attempting to enforce an *agreement* with the owner to perform home improvements. . . . The outcome in each of [those] cases resulted from a failure to comply with the act by the target of the act, that is, the contractor who had dealt directly with the homeowner and who had been the party ultimately responsible for the subcontractor." (Citations omitted; emphasis in original.) Id., 166–67. Finally, the court reasoned that the legislature had acquiesced in such an interpretation from its failure to amend the act following the decision in *O'Donnell* v. *Rindfleisch*, 13 Conn. App. 194, 535 A.2d 824, cert. denied, 207 Conn. 805, 540 A.2d 373 (1988), a case in which this court determined that the act did not apply to subcontractors.[4] See *Meadows* v. *Higgins*, supra, 167–68.

In light of this Supreme Court precedent interpreting the act and our determination that the court's factual findings are amply supported by evidence in the record, we conclude that the court erred in holding that the act applied under the facts of the present case. As found by the court, the homeowners entered into a written contract with Hobbs to serve as the general contractor throughout the home improvement construction. The plaintiff, on the other hand, was solicited by Hobbs, the general contractor, to perform subcontracting work during the construction of the improvements.[5] The plaintiff, then, was "the *subcontractor* that Janiszewski

---

[4] In the case of *MJM Landscaping, Inc.* v. *Lorant*, supra, 268 Conn. 436, the court, without revisiting its holding in *Meadows*, reiterated that "as a matter of law . . . subcontractors are not subject to the requirements of the act."

[5] We also note that the court's finding that the plaintiff and Hobbs never entered into a binding agreement does not undermine the court's finding that the plaintiff was acting as a subcontractor of Hobbs. See *MJM Landscaping, Inc.* v. *Lorant*, supra, 268 Conn. 438 (finding that failure of subcontractor and general contractor to enter into "a formal written agreement . . . [did] not alter the fundamental nature of the relationship between them").

had recommended [to Hobbs] and wanted for the job," not a general contractor hired by the homeowners. (Emphasis added.) Therefore, because the plaintiff was a subcontractor, the transaction between the homeowners and the plaintiff, consisting of the installation of the system, did not constitute a home improvement contract to which the act would apply. *Meadows* v. *Higgins*, supra, 249 Conn. 166. Consequently, the court improperly concluded that the plaintiff came within the confines of the act and that the act applied under the facts of the present case.

Having concluded that the court erred in holding that the act applied under the facts of the present case, we need not consider whether the court erred in applying the bad faith exception. Furthermore, because the act did not apply, the homeowners cannot rely on it as a defense to the plaintiff's claim for unjust enrichment. We therefore turn to the homeowners' alternative claim.

B

In the alternative, the homeowners claim that the court improperly permitted the plaintiff to recover on a theory of unjust enrichment because the homeowners were not enriched unjustly. The homeowners specifically argue that they made good faith payments to Hobbs, the general contractor, for the work performed by the plaintiff, the subcontractor.[6] We reject this claim.

In effect, the homeowners' claim is a challenge to the court's factual finding that "Hobbs . . . received

[6] The homeowners also suggest that the court erred in allowing the plaintiff to recover under a theory of unjust enrichment because there was no agreement between the parties. This argument, however, confuses a claim based on breach of contract with a claim based on unjust enrichment. Unlike a breach of contract claim, the elements of an unjust enrichment claim do not require the formation of an agreement. See *American Express Centurion Bank* v. *Head*, 115 Conn. App. 10, 15–16, 971 A.2d 90 (2009) (setting forth requirements for breach of contract claim and unjust enrichment claim). Accordingly, we reject the homeowners' argument to the extent that it rests on the absence of any agreement.

no payment from the [homeowners] covering the costs of the [system's] installation." "The clearly erroneous standard is the well settled standard for reviewing a trial court's factual findings. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 326–27, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009). "The resolution of conflicting factual claims falls within the province of the trial court. . . . We cannot retry the facts or pass on the credibility of the witness." (Citations omitted.) *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 473, 542 A.2d 692 (1988).

Applying this deferential standard of review, we conclude that the court's finding that Hobbs did not receive any compensation for the work performed by the plaintiff was not clearly erroneous. At the hearing, the contract between Hobbs and the homeowners was introduced into evidence. The contract provided that Hobbs would receive five progress payments throughout the course of construction.[7] Hobbs testified that he received the first three progress payments from the homeowners and that none of these payments covered installation of the system. Therefore, from the evidence presented at trial, the court reasonably could have concluded that none of the payments Hobbs received from the homeowners included the costs of installing the system.

Accordingly, because we conclude that the act does not apply under the facts of the present case and, further, that the homeowners have not shown that the

[7] See footnote 2 of this opinion.

court erred in applying the doctrine of unjust enrichment, we agree with the court that the plaintiff was permitted to maintain a cause of action for unjust enrichment against the homeowners.

## II

The homeowners next claim that the court erroneously found that they had anticipatorily breached the contract with Hobbs, thereby allowing Hobbs to terminate the contract. The homeowners specifically argue that Hobbs failed to provide the predicate evidence necessary to support a claim of anticipatory repudiation. We reject this claim.

"Anticipatory breach of contract occurs when a party communicates a definite and unequivocal manifestation of intent not to render the promised performance at the contractually agreed upon time. . . . The manifestation of intent not to render the agreed upon performance may be either verbal or non-verbal . . . and is largely a factual determination in each instance." (Citations omitted.) *Koski* v. *Eyles*, 37 Conn. Sup. 861, 862–63, 440 A.2d 317 (1981); see also *Land Group, Inc.* v. *Palmieri*, 123 Conn. App. 84, 92, 1 A.3d 234 (2010). "The resolution of conflicting factual claims falls within the province of the trial court." *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, supra, 207 Conn. 473. The trial court's factual findings are "subject to review in this court only to determine whether, in light of the evidence and the pleadings in the record as a whole, they are clearly erroneous." *Gilman* v. *Pedersen*, 182 Conn. 582, 585, 438 A.2d 780 (1981). "We cannot retry the facts or pass on the credibility of the witness." *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, supra, 473. The effect of an anticipatory breach "is to allow the nonbreaching party to discharge his remaining duties of performance . . . ." (Internal quotation

marks omitted.) *Land Group, Inc.* v. *Palmieri*, supra, 92.

Upon review of the entire record, we can find no reason to disturb the court's finding that the homeowners anticipatorily breached the contract. The contract entered into by the parties obligated the homeowners to pay Hobbs $11,118 as the fifth and final progress payment upon completion of the project. At the hearing, Hobbs testified that, several days before he sent the May 16, 2005 letter, Janiszewski had angrily informed him that "[he] would never see [his] final payment on the contract." Hobbs testified that Janiszewski's refusal to make the final payment upon completion was the primary reason that he had elected to treat the contract as terminated. Although Janiszewski presented contradictory evidence regarding his statement, "[i]t is peculiarly within the province of the trier of fact to judge the credibility of a witness. . . . It is the trial court which had an opportunity to observe the demeanor of the witnesses and parties; thus, it is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Citation omitted; internal quotation marks omitted.) *Vesce* v. *Lee*, 185 Conn. 328, 335, 441 A.2d 556 (1981). Therefore, the court's finding that Janiszewski had told Hobbs that he had no intention of paying him the final payment due on the contract is adequately supported by the record and is not clearly erroneous. Accordingly, we conclude that the court properly found that the homeowners anticipatorily breached the contract with Hobbs.

The judgment is affirmed.

In this opinion the other judges concurred.