TONY GENUA *v.* ANN MARIE LOGAN ET AL.
(AC 30122)

Gruendel, Harper and Pellegrino, Js.

Argued September 17—officially released December 1, 2009

*Christine K. Blethen,* with whom, on the brief, was *David M. Sheridan,* for the appellants (defendants).

*Matthew T. Wax-Krell,* with whom, on the brief, was *Mark A. Rosenblum,* for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. The defendants, the town of Somers and its town clerk, Ann Marie Logan, appeal from the trial court's judgment in favor of the plaintiff, Tony Genua, finding that the defendants were negligent by improperly indexing in the town's land records an affidavit filed by the plaintiff protecting his right of first refusal to purchase land. On appeal, the defendants argue that the right of first refusal was terminated pursuant to the plain language of the plaintiff's partnership agreement (agreement), thereby rendering harmless the defendants' improper indexing of the plaintiff's affidavit. We agree with the defendants and reverse the judgment of the trial court.

Following a hearing, the court issued a memorandum of decision finding the following facts. On July 29, 1994, the plaintiff entered into the agreement with Sharon Fales, Paul L. Filippini and Eileen Filippini to purchase roughly seventy acres of property in Somers. The parties agreed to act as partners, with half of the purchase

price paid by the plaintiff and Fales, and the other half paid by the Filippinis.[1] The agreement contained a right of first refusal, providing that if any party wanted to transfer his or her share of the property, the remaining parties would have a right of first refusal to purchase that portion of the property.[2] The property remained undisturbed until September 27, 2002, when Fales decided to withdraw from the partnership and to sell her 25 percent interest to the plaintiff.[3] After the sale, the plaintiff owned half of the property, while the Filippinis owned the other half. Each paid half of the expenses.[4] On March 28, 2005, the plaintiff and the Filippinis had the land surveyed to facilitate dividing the property. The parties consulted with their attorneys, who prepared quitclaim deeds to divide the property. Throughout this negotiation process, no party discussed the viability of the partnership agreement or the right of first refusal provision contained therein.

In December, 2005, the plaintiff consulted an attorney to make certain that his right of first refusal was still viable. The plaintiff's attorney drafted an affidavit to be filed with the land records of the Filippinis' property, and the agreement was attached to the affidavit. The affidavit stated on top, in bold type, that the parcel's

---

[1] An essential fact at issue within this appeal is whether the agreement recognized four equal partners, or two groups of two partners, each owning a 50 percent interest.

[2] Section four of the agreement states in relevant part: "The parties to this Agreement agree that within six (6) months of acquisition of the property described in Schedule A attached, the following will occur . . . (e) Should any of the parties to this Agreement desire to sell a portion of the real estate described in Schedule A and B attached hereto, right of first refusal is granted to the remaining parties. . . ."

[3] The agreement states in § 2: "The partnership shall commence immediately and shall terminate upon sale of the property or buy-out of one partner by the other."

[4] The agreement states in § 3 that "[t]he parties are to pay equally all utilities, taxes, special assessments, insurance and repairs and maintenance associated with the ownership of said property."

owners of record were the Filippinis. On December 8, 2005, the plaintiff took this document to Logan, who subsequently recorded the affidavit in the Somers land records but mistakenly indexed the document such that the plaintiff, rather than the Filippinis, was listed as the grantor of the land.

On December 27, 2005, the Filippinis sold their thirty-five acre parcel to Joanne F. Ladd, whose title search failed to put her on notice of the plaintiff's claimed right of first refusal. In February, 2006, the plaintiff learned from a newspaper publication that the Filippinis had conveyed their thirty-five acre lot to Ladd. He subsequently filed suit against Logan and the town of Somers.

On June 25, 2008, the court issued its memorandum of decision in favor of the plaintiff, finding that the partnership did not terminate when Fales transferred her property to the plaintiff and that the defendants were negligent by improperly indexing the plaintiff's affidavit. This appeal followed.

On appeal, the essential issue that we must resolve is whether the agreement remained in effect when the plaintiff filed his affidavit in the land records. The defendants argue that the partnership was terminated when Fales transferred her interest to the plaintiff, and, thus, even if we were to assume that the defendants misfiled the plaintiff's affidavit, that breach of duty caused no actual harm to the plaintiff. We agree with the defendants. Additional facts will be provided as necessary.

We begin by setting forth our standard of review. The standard of review for the issue of contract interpretation is well established. When, as here, "there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Accordingly, our review is plenary." (Citation omitted; internal quotation marks omitted.) *Trugreen Landcare, LLC* v. *Elm City*

*Development & Construction Services, LLC,* 101 Conn. App. 11, 13–14, 919 A.2d 1077 (2007). The reviewing court must "decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Fleming,* 284 Conn. 250, 258, 932 A.2d 1053 (2007).

"The intent of the parties as expressed in a contract is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citation omitted; internal quotation marks omitted.) *Trugreen Landcare, LLC* v. *Elm City Development & Construction Services, LLC,* supra, 101 Conn. App. 14.

The plain language of § 2 of the agreement states that the partnership "shall terminate upon sale of the property or buy-out of one partner by the other." It is undisputed that the plaintiff bought Fales' interest in the property. Therefore, in reviewing the viability of the partnership agreement, we must determine whether it was legally and logically correct for the court to

determine that the aforementioned sale did not trigger the termination clause in § 2 of the agreement.

The plaintiff argues that the termination clause did not become activated upon the sale between him and Fales, citing the language of § 2, which references the "buy-out of one partner by the other." The plaintiff argues that the court implicitly found the contract to be ambiguous, and interpreted the contract as a partnership with the Filippinis on one side and Fales and the plaintiff on the other. On the basis of that interpretation, the transfer between Fales and the plaintiff did not activate the termination clause of the agreement in § 2 because the partnership was actually between the two groups rather than the four individual parties.

We conclude that this interpretation is not legally and logically correct and does not find support in the facts that appear in the record. See *C. R. Klewin Northeast, LLC* v. *Fleming,* supra, 284 Conn. 258. The plaintiff's interpretation cannot withstand review because the ambiguity it alleges does not emanate from the language of the agreement but from the plaintiff's subjective interpretation of that language. See *Southeastern Connecticut Regional Resources Recovery Authority* v. *Dept. of Public Utility Control,* 244 Conn. 280, 292, 709 A.2d 549 (1998).

There is no language in the contract that the phrase "one partner by the other" meant that each of the four parties did not have a distinct 25 percent interest in the property. The agreement begins by stating that this "[a]greement [is] made and entered . . . between PAUL L. FILIPPINI, EILEEN FILIPPINI, TONY GENUA and SHARON FALES . . . ." Section one of the agreement then states that "[t]he parties have agreed to be co-partners in the ownership of certain real estate

. . . ."[5] Moreover, the court expressly stated in its memorandum of decision that "[i]n 2002, Fales conveyed her 25 percent interest in the property to [the plaintiff]." That finding plainly contradicts the assertion that any of the four parties did not have a distinct, 25 percent interest in the property. Last, the agreement is signed by each of the four partners in their individual capacities, rather than in pairs.

To construe this contract as to involve two groups of two partners rather than four distinct partners would be to "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Trugreen Landcare, LLC* v. *Elm City Development & Construction Services, LLC*, supra, 101 Conn. App. 14. A court simply cannot "disregard the words used by the parties or revise, add to, or create a new agreement." *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 374, 321 A.2d 444 (1973). "A term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument." *Texaco, Inc.* v. *Rogow*, 150 Conn. 401, 408, 190 A.2d 48 (1963).

The court did not find ambiguity in the terms of the contract, either explicit or implicit, and, therefore, erroneously looked to the intentions of the parties rather than the plain language of the contract. In fact, at trial, the court stated: "Section one and § 2 are not ambiguous. I can't—I can't get away from that." Because the terms of the agreement are clear and unambiguous, the court was bound to confine its review to the four corners of the agreement. Subsequently, by considering evidence of intent outside the confines of the contract, the court came to a conclusion that was legally and logically incorrect.

---

[5] It should also be noted that § 4 (e) of the agreement states that the "right of first refusal is granted to the remaining *parties*," not the remaining *party*. (Emphasis added.)

In its memorandum of decision, the court explained that after the transfer between the plaintiff and Fales, the plaintiff and the Filippinis continued to "treat the partnership agreement as being in effect . . . ."[6] Although it is true that the parties continued to share equally the burden of expenses, there is nothing in the record to indicate that this was done as a result of the agreement. The plaintiff and the Filippinis each owned a 50 percent share of the property, so it logically follows that each would pay half of the expenses in the absence of any contrary agreement. Further, following the transfer between Fales and the plaintiff, the parties chose not to adhere to numerous other provisions of the agreement.[7] There is no evidence in the record to support the court's conclusion that the parties continued to treat the agreement as being in effect.[8]

Section two of the agreement clearly and unambiguously states that the agreement "shall terminate upon sale of the property or buy-out of one partner by the other." The plaintiff bought Fales' share, and that transfer terminated the agreement. As a result, we find that the court erred by failing to give effect to the plain and definite language of the agreement. There is no contract language to support a finding that the right of first refusal extended beyond the date of termination of the partnership. Because the plaintiff's right of first refusal was terminated along with the agreement, the plaintiff suffered no harm from the defendants' failure to properly record his right of first refusal in the Somers land records.

---

[6] See footnote 4.

[7] In dividing the property, the parties ignored the guidelines set out in §§ 4 and 6 of the agreement. Likewise, the court acknowledged in its memorandum of decision that the plaintiff's right of first refusal pursuant to § 4 was never discussed between the Filippinis, the plaintiff or their attorneys when they met to discuss division of the property.

[8] According to the court, the right of first refusal did not terminate because "[the plaintiff] believed the right of first refusal remained in effect and no one testified otherwise." We find this analysis unavailing.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendants.

In this opinion the other judges concurred.