# AARON MANOR, INC. *v.* JANET A. IRVING
## (AC 30900)

Lavine, Alvord and Schaller, Js.

Argued October 22, 2010—officially released February 22, 2011

*Edward M. Rosenthal,* for the appellant (plaintiff).

*Gerald L. Garlick,* with whom, on the brief, was *Charles J. Irving,* for the appellee (defendant).

ALVORD, J. The plaintiff, Aaron Manor, Inc., appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendant, Janet A. Irving. The plaintiff claims that the court improperly (1) failed to find that the defendant breached her contract with the plaintiff and (2) awarded attorney's fees to the defendant pursuant to General Statutes § 42-150bb. We agree with the plaintiff's second claim and reverse in part the judgment of the trial court.

The court's memorandum of decision and the record reveal the following undisputed facts and procedural history. The plaintiff is a skilled nursing care facility that provides medical care, including long-term care, room and board, and prescription medication for its residents. William P. Ammon, the defendant's father, was admitted to the plaintiff's facility on October 29, 2002. Upon his admission, the defendant signed a "Patient/Resident Admissions Agreement" (admission agreement) and various other documents as the "responsible party" for the patient. Section II, paragraph 10, of the admission agreement states that "[i]f the responsible party has control of or access to the patient/resident's income and/or assets, the responsible party agrees that these funds shall be used for the patient/resident's welfare, including but not limited to making prompt payment for care and services rendered to the patient/resident in accordance with the terms of this agreement."

The defendant never had her father's power of attorney, nor had she ever been appointed conservatrix of his person or estate, or executrix or administratrix of his estate after he died. When her father was admitted to the facility, the defendant informed the plaintiff that she would be the contact person for matters concerning her father's personal care, and that her brother, William

P. Ammon, Jr. (Ammon, Jr.), would be responsible for their father's financial matters. The admitting record form lists Ammon, Jr., as the person responsible for the account, and the plaintiff mailed monthly bills directly to him. Ammon, Jr., held a power of attorney for their father and paid the father's bills from the father's bank account.

The defendant's father was a resident at the plaintiff's nursing care facility from the date of his admission until his death on July 24, 2003. Initially, the charges for his residency were covered by medicare. His private health insurance then paid for his care until March 1, 2003, at which time the plaintiff was notified by the insurer that the coverage was being discontinued on the ground that he no longer required skilled care. From June 11, 2003, until the date of his death, the private health insurance again paid for the father's residency. Thus, the period of time uncovered by either medicare or the private health insurance was March 1 through June 10, 2003, which resulted in a total unpaid balance of $27,340.

The father's bank statements for the period of March 1 through June 30, 2003, indicated account balances fluctuating between $26,000 and $54,000. The father had additional assets, including shares of stock, certificates of deposit and a house in Bridgeport. Although the plaintiff sent monthly invoices to Ammon, Jr., the account for the father remained unpaid. Despite the outstanding bill, Ammon, Jr., wrote a check payable to the defendant for $11,000 from the father's account as a gift in April, 2003. Similarly, he wrote a check to himself at the same time for $11,000 from the father's account. After the father's death, the house in Bridgeport was sold, and Ammon, Jr., gifted the defendant $55,000, and, similarly, gifted himself $55,000 from the proceeds of that sale.

The defendant never questioned the quality of care provided her father during his stay at the plaintiff's facility. In fact, she testified that the "caregivers are exceptional." Notably, her mother was a resident at the plaintiff's facility at the time of trial, and the defendant herself had been a resident in the past. Nevertheless, neither the defendant nor Ammon, Jr., paid the outstanding bill from their father's assets even though the assets were ample and more than sufficient to satisfy the amount due the plaintiff.

The plaintiff filed the present action against the defendant in March, 2006, claiming breach of contract and fraud. The defendant, represented by her husband, attorney Charles J. Irving, filed an answer with seven special defenses and a four count counterclaim. Pretrial discovery and pleadings were handled by attorney Irving. Shortly before trial, the firm of Krasow, Garlick and Hadley, LLC, filed an appearance in lieu of attorney Irving on behalf of the defendant. The case was tried before the court on April 8, 2008.

By memorandum of decision filed September 24, 2008, the court found that the defendant did not have a power of attorney for her father and did not have access to his checking account or to any of his other financial resources. Accordingly, the court rendered judgment in favor of the defendant on the complaint. The court found the issues in favor of the plaintiff on the counterclaim. Thereafter, the plaintiff filed a motion for reargument and reconsideration pursuant to Practice Book § 11-12, which the court granted but denied the relief requested.

By motion filed October 8, 2008, the defendant requested attorney's fees pursuant to § 42-150bb and Practice Book § 11-21 for her successful defense against the complaint. The plaintiff filed an objection to the

motion, claiming, inter alia, that the defendant's attorney's fees were spent primarily on the prosecution of the counterclaim and not in the defense of the plaintiff's claim. A hearing was held November 3, 2008, at which time the defendant requested $39,000 for pretrial and trial representation. Of that amount, $25,481.25 was requested by the defendant's husband's firm, Charles J. Irving, LLC, for pretrial representation.[1] On November 25, 2008, Charles J. Irving, LLC, filed an appearance on behalf of the defendant in addition to the appearance already on file of Krasow, Garlick and Hadley, LLC. On February 27, 2009, the court issued its memorandum of decision on the request for attorney's fees. In that decision, the court noted that "[t]he plaintiff argues that the attorney's fees should not apply to the counterclaim upon which she did not prevail. The court agrees with this argument. Accordingly, the court awards to defendant Janet Irving attorney's fees in the amount of $36,000 for successfully defending the complaint in this case." No further explanation was provided for the court's calculation of the amount awarded.

On September 22, 2009, attorney Irving filed an application for a prejudgment remedy in the amount of $75,000 to secure the attorney's fees already awarded and to secure "substantial additional [attorney's] fees for the defense of the plaintiff's appeal, which [attorney's] fees are subject to a further award to the defendant pursuant to [§] 42-150bb." The court granted the application in the amount of $50,000. Additional facts and procedural history will be set forth as necessary.

I

LIABILITY UNDER THE CONTRACT

The plaintiff claims that the court improperly failed to find the defendant liable under the admission

[1] In reviewing attorney Irving's billing summary, we note that the first three entries are for legal services performed in July and September, 2005, which was prior to the service of process of the complaint, which occurred

agreement for those funds that she received as gifts and reimbursements from her father's assets through Ammon, Jr., by means of the father's power of attorney. The defendant argues that the court concluded correctly that the only person who had access to the patient's funds was Ammon, Jr., and that the defendant was under no obligation to remit to the plaintiff any gifts or reimbursements that she received. We agree with the defendant.

The following additional facts were found by the court in a supplementary memorandum of decision filed June 1, 2009. The father had a joint checking account with his wife from which Ammon, Jr., paid their bills pursuant to his power of attorney. As previously noted, between March and June, 2003, the period during which the $27,340 balance accrued, Ammon, Jr., transferred various sums of money to himself and to the defendant. The funds transferred to the defendant from the checking account were either reimbursements for funds expended by the defendant on behalf of her father and/ or mother or monetary gifts from her father and/or mother. Specifically, one check to the defendant was the previously mentioned gift in the amount of $11,000. Various other checks reimbursed the defendant for purchases she made for her father for such items as shoes, sweaters and pants, bringing the total amount transferred to the defendant from the checking account to $13,630.89. The court concluded that, upon the defendant's receipt of the funds, the funds became her property, and not the father's, and therefore she was under no legal obligation to use these funds to pay the plaintiff's outstanding bill.

On appeal, the plaintiff does not challenge these findings. Rather, it challenges the conclusion that the defendant was under no legal obligation to use the $13,630.89

many months later on March 13, 2006. At the time of trial, the defendant testified that she had not yet paid her husband his fees.

to pay the plaintiff's outstanding bill. It maintains that because she had "access" to her father's funds, the defendant's failure to remit the funds to the plaintiff constituted a breach of the admission agreement. To resolve this question, we must examine the language of the admission agreement that the plaintiff relies on to support its claim.

"We begin by setting forth our standard of review. The standard of review for the issue of contract interpretation is well established. When, as here, there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Accordingly, our review is plenary. . . . The reviewing court must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Genua* v. *Logan*, 118 Conn. App. 270, 273–74, 982 A.2d 1125 (2009).

"Whether there was a breach of contract is ordinarily a question of fact. . . . We review the court's findings of fact under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Citation omitted; internal quotation marks omitted.) *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 77 Conn. App. 462, 471–72, 823 A.2d 438 (2003).

It is undisputed that the defendant was the "responsible party," as that term is used in the admission

agreement. She signed many documents on her father's behalf, including documents relating to organ donation, the administration of oxygen and an influenza vaccine, and regarding her father's participation in facility activities and social events. The admission agreement provides that "[i]f the responsible party has control of or access to the patient/resident's income and/or assets, the responsible party agrees that these funds shall be used for the patient/resident's welfare, including but not limited to making prompt payment for care and services rendered to the patient/resident in accordance with the terms of this agreement." (Emphasis added.) The contract, as drafted by the plaintiff, employs the word "if." The contract does not require that the person serving as the "responsible party" also be the person in control of the patient's income or assets. The plain language of the contract contemplates a scenario in which one party may be responsible for making decisions for the patient's personal care while another may be responsible for "making prompt payment for care and services rendered to the patient."

The evidence on which the plaintiff relies for the proposition that the defendant had "access" to the patient's assets is that she received $13,630.89 in gifts and reimbursements from him during the relevant period. We agree with the court's conclusion that when the defendant received a gift from her father through the power of attorney, title vested in her immediately.[2] As a result, that sum could not be considered accessible funds for the purpose of holding the defendant liable for her father's debt under the admission agreement. Similarly, we do not agree that, when the defendant expended her own funds for the benefit of her father

---

[2] A gift is the transfer of property without consideration. The two requisites of a valid gift are a delivery of the possession of the property to the donee and an intent that the *title thereto shall pass immediately to him. Guinan's Appeal from Probate*, 70 Conn. 342, 347, 39 A. 482 (1898).

and received reimbursements from her father through Ammon, Jr., the reimbursed sums were accessible funds such that the defendant is liable for breach of contract. The evidence indicates that the plaintiff mailed monthly bills for its services to Ammon, Jr., as the person responsible for the account, and not to the defendant. Ample evidence was presented to support the court's finding that Ammon, Jr., and not the defendant, had their father's power of attorney and had access to their father's checking account and other financial resources.

The plaintiff's reliance on *Sunrise Healthcare Corp.* v. *Azarigian*, 76 Conn. App. 800, 821 A.2d 835 (2003), is misplaced. Unlike the defendant in the present case, the defendant in *Sunrise Healthcare Corp.* had executed a contract with a nursing care facility both as the "responsible party" under the contract *and* as the patient's power of attorney. Id., 802. As such, she had " 'control of or access to the resident's income and/or assets' "; id., 808; and breached the contract with the facility by misusing the patient's assets. Id., 813. We agree with the court that the defendant in the present case had no such control or access. Accordingly, we conclude that the defendant is not obligated under the admission agreement to remit to the plaintiff any sums that she received from her father as gifts or reimbursements.

## II

## ATTORNEY'S FEES

Section 42-150bb[3] provides that a consumer may recover attorney's fees against a commercial party

---

[3] General Statutes § 42-150bb provides: "Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. Except as hereinafter provided, the size of the attorney's fee awarded to the consumer shall be based as far as practicable upon the terms governing the size of the fee for the commercial

when the consumer successfully defends an action based on a contract "in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes" if the contract provides for attorney's fees for the commercial party. The plaintiff challenges whether § 42-150bb applies to this contract, whether the defendant was a consumer entitled to recover attorney's fees pursuant to the statute[4] and, if this court concludes that the statute does apply, whether the attorney's fees awarded were reasonable. We conclude that the statute does not apply because the defendant is not a consumer and, therefore, that the court improperly awarded the attorney's fees.

We set forth our standard of review and the relevant principles of law. "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights." (Internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual*

party. No attorney's fee shall be awarded to a commercial party who is represented by its salaried employee. In any action in which the consumer is entitled to an attorney's fee under this section and in which the commercial party is represented by its salaried employee, the attorney's fee awarded to the consumer shall be in a reasonable amount regardless of the size of the fee provided in the contract or lease for either party. For the purposes of this section, 'commercial party' means the seller, creditor, lessor or assignee of any of them, and 'consumer' means the buyer, debtor, lessee or personal representative of any of them. The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes."

[4] This issue was not raised by the plaintiff in the trial court. After oral argument, this court requested and received briefs from both parties on the question of whether the defendant was a consumer under the statute.

*Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007). "The law expects parties to bear their own litigation expenses, except where the legislature has dictated otherwise by way of statute. . . . Section 42-150bb clearly authorizes an award of attorney's fees to the consumer who successfully prosecutes or defends an action or a counterclaim on a consumer contract or lease." (Citations omitted; internal quotation marks omitted.) *Traystman, Coric & Keramidas, P.C.* v. *Daigle*, 282 Conn. 418, 429, 922 A.2d 1056 (2007).

Whether the defendant is a "consumer" pursuant to the statute presents a question of statutory construction. Statutory construction is "a [question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) *Saunders* v. *Firtel*, 293 Conn. 515, 525, 978 A.2d 487 (2009).

Section 42-150bb provides in relevant part: "Whenever any contract or lease . . . to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee

shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. . . ." As noted by our Supreme Court in *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 75, 689 A.2d 1097 (1997), the purpose of § 42-150bb is to make attorney's fees clauses " 'reciprocal' " in order to bring parity between a commercial party and a consumer. The legislature was concerned with remedying an inequitable situation: "What [the statute] does is give some equity to the situation. At the present time, many form contracts include attorney's fees provisions for the commercial party, and even though . . . that [commercial] party may be wrong and a consumer successfully defends an action against him, or her, [the consumer] would not be entitled to receive attorney's fees in defending that action." (Internal quotation marks omitted.) Id., 75–76.

"Under § 42-150bb, the court has no latitude to deny [attorney's fees] to a *consumer* who successfully defends an action brought against him by a commercial party." (Emphasis added.) Id., 66. Such attorney's fees are available, rather, by operation of law. Id. Section 42-150bb provides in relevant part that "[f]or the purposes of this section . . . 'consumer' means the buyer, debtor, lessee or personal representative of any of them. . . ." The defendant concedes, and we agree, that she is not a buyer, debtor or lessee as those terms are used in the statute. We agree with both parties that if anyone was a buyer pursuant to the statute, it was the father because it was he who received the plaintiff's services and it was from his assets that outstanding bills were to be paid.

The defendant maintains, however, that she was the buyer's "personal representative" and is thus a "consumer" for the purposes of the statute. The term "personal representative" is not defined in § 42-150bb[5] but

---

[5] The legislative history of § 42-150bb provides no guidance in this regard. See Public Acts 1979, No. 79-453.

is used throughout our statutes to refer to a person who acts as a custodian or guardian of a person who lacks capacity or one with authority to act on behalf of a decedent.[6] As our Supreme Court has explained, "[w]hen a statute does not provide a definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." (Internal quotation marks omitted.) *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 633, 6 A.3d 60 (2010). Webster's Third New International Dictionary (1993) defines a "personal representative" as "a person (as an executor or administrator for a deceased person, heir or next of kin for an ancestor, a devisee or legatee for a testator, a receiver for an absent or insolvent person or guardian or conservator or committee for an incompetent) who stands in the place of another or who represents his legal interests." See also Black's Law Dictionary (9th Ed. 2009) ("personal representative. . . . A person who manages the legal affairs of another because of incapacity or death, such as the executor of an estate.").

In the present case, no conservator ever was appointed for the defendant's father. The defendant did not have his power of attorney,[7] was not appointed his conservatrix and was not the executrix or administratrix of his estate after he died. She simply does not fall within that term as it has been used in our statutory scheme or fall within the definition of personal representative as defined in Webster's Third New International Dictionary or Black's Law Dictionary. She signed the admission agreement as the responsible party and

---

[6] See, e.g., General Statutes §§ 3-94q (pertaining to personal representative of deceased notary), 20-122 (pertaining to personal representative of deceased dentist), 33-182g (pertaining to personal representative of deceased or legally incompetent shareholder).

[7] There also was testimony at trial that the defendant was not a co-owner of her father's checking or savings accounts.

obligated herself to pay the plaintiff for her father's care from her father's assets if she had control over his assets. The defendant consistently took the position, and the trial court agreed, that she had no authority over the disposition of her father's assets.[8] The terms responsible party and personal representative are not synonymous. We decline to expand the definition of personal representative to include the defendant, and, especially under these circumstances, it would not be legally sound to do so.

Furthermore, as we previously noted, Connecticut adheres to the American rule. *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, supra, 282 Conn. 582. Section 42-150bb, enacted in 1979, provides for the recovery of attorney's fees by a consumer who successfully prosecutes or defends an action or a counterclaim based on a consumer contract. "[W]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction." (Internal quotation marks omitted.) *Rawling* v. *New Haven*, 206 Conn. 100, 105, 537 A.2d 439 (1988). Accordingly, § 42-150bb should be strictly construed.

We are particularly reluctant to expand the definition of personal representative to include responsible party because the award of statutory fees under § 42-150bb is mandatory. "[T]he court has no latitude to deny such an award to a consumer who successfully defends an action brought against him by a commercial party." *Rizzo Pool Co.* v. *Del Grosso*, supra, 240 Conn. 66. The court has no discretion; it is obligated to award reasonable attorney's fees by operation of law. Id. To expand

---

[8] A consumer is "[a] person who *buys* goods or services for personal, family, or household use . . . ." (Emphasis added.) Black's Law Dictionary, supra. In this case, the defendant had no access to her father's funds and was not in a position to purchase anything for him.

the definition of personal representative in the way proposed by the defendant and the dissent represents a policy decision more properly left to the legislature, not this court.

Because the defendant is not a buyer, debtor, lessee or personal representative, her claim that she is a consumer under § 42-150bb must fail. Accordingly, she was not entitled to attorney's fees under that statutory provision, and the court improperly awarded those fees to her.[9]

The judgment is reversed only as to the award of attorney's fees and the case is remanded with direction to vacate that award. The judgment is affirmed in all other respects.

In this opinion LAVINE, J., concurred.

SCHALLER, J., concurring in part and dissenting in part. Although I agree with part I of the majority opinion, I respectfully disagree with part II. The plaintiff, Aaron Manor, Inc., claimed in its breach of contract action that the defendant, Janet A. Irving, was the party responsible for payments for the care of its patient, her late father, William Ammon. The defendant successfully defended the action. In my view, the defendant was a "consumer" entitled to recover attorney's fees from the plaintiff under General Statutes § 42-150bb.[1] Accordingly, I dissent from part II in which the majority concludes that the defendant was not entitled to recover such fees.

---

[9] Because the resolution of this issue is dispositive of the plaintiff's appeal with respect to the award of attorney's fees, we do not reach its claim that the amount awarded by the trial court was unreasonable.

[1] General Statutes § 42-150bb provides: "Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. Except as hereinafter provided, the size of the attorney's fee awarded to the consumer shall be based as far as

The plaintiff, a nursing facility that provides medical care and services, incurred expenses providing such services to Ammon. The record indicates that on the day he was admitted to the facility, "confusion" prevented him from signing the forms necessary for admission. In order to gain him admission to the facility, his daughter, the defendant, signed a number of documents, including the admission agreement, as the "responsible party." As found by the trial court, the defendant informed the plaintiff that she would be the contact person for matters concerning the patient's personal care, and that her brother, William P. Ammon, Jr. (Ammon, Jr.), would be responsible for the patient's financial matters. The admitting record form lists Ammon, Jr., as the person responsible for the account. Ammon, Jr., held a power of attorney for his father and managed his financial affairs, including paying his bills from his bank account. The plaintiff mailed monthly bills for the services provided to the patient directly to Ammon, Jr.

The plaintiff provided care and services for which it was not paid by either medicare or the patient's insurance carrier. The plaintiff, a commercial party, commenced the present action against the defendant, alleging in its complaint that she had agreed, by signing the admission agreement, to apply her father's income

practicable upon the terms governing the size of the fee for the commercial party. No attorney's fee shall be awarded to a commercial party who is represented by its salaried employee. In any action in which the consumer is entitled to an attorney's fee under this section and in which the commercial party is represented by its salaried employee, the attorney's fee awarded to the consumer shall be in a reasonable amount regardless of the size of the fee provided in the contract or lease for either party. For the purposes of this section, 'commercial party' means the seller, creditor, lessor or assignee of any of them, and 'consumer' means the buyer, debtor, lessee or personal representative of any of them. The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes."

and assets to pay for such care and services if she had control of or access to her father's income or assets. The plaintiff alleged that she had such control or access but had failed to pay the outstanding balance for the services. It alleged further that, because of the defendant's breach of the admission agreement, it was entitled to interest and reasonable attorney's fees as provided in the agreement.

The defendant successfully defended this breach of contract action based on the plaintiff's failure to prove that she had the requisite control of or access to her father's income or assets. The defendant requested the court to award her attorney's fees pursuant to § 42-150bb and Practice Book § 11-21, which the court granted in the amount of $36,000.[2]

Section 42-150bb provides that a "consumer" may recover attorney's fees against a commercial party when the consumer successfully defends an action based upon a contract "in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes" if the contract provides for attorney's fees for the commercial party. General Statutes § 42-150bb. Section 42-150bb provides in relevant part that "[f]or the purposes of this section . . . 'consumer' means the buyer, debtor, lessee or personal representative of any of them. . . ." As noted by the majority, the issue in the present appeal is whether the defendant was the "personal representative" of her father, and therefore, a "consumer" entitled to avail herself of the statute.[3]

---

[2] See *Traystman, Coric & Keramidas, P.C.* v. *Daigle*, 282 Conn. 418, 432, 922 A.2d 1056 (2007) ("the proper procedural vehicle for requesting an award of attorney's fees pursuant to § 42-150bb is a motion for attorney's fees pursuant to [Practice Book] § 11-21").

[3] I note that the plaintiff also argues that the statute is inapplicable because the admission agreement to the nursing care facility is not a contract " 'in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes' " pursuant to the statute. The agreement states in part II, paragraph 1, that the plaintiff "agrees

Whether the defendant is a "consumer" pursuant to the statute presents an issue of statutory construction, which is "a [question] of law, over which [this court exercises] plenary review." (Internal quotation marks omitted.) *Saunders* v. *Firtel*, 293 Conn. 515, 525, 978 A.2d 487 (2009).

As the majority points out, the statute is in derogation of the common law American rule that attorney's fees and ordinary expenses and burdens of litigation are not awarded to the successful party absent a contractual or statutory exception. *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007). While there are few exceptions to this rule, it does not necessarily follow that the statute must be construed narrowly, as the majority determines. "The law expects parties to bear their own litigation expenses, *except* where the legislature has dictated otherwise by way of statute. . . . Section 42-150bb clearly authorizes an award of attorney's fees to the consumer who successfully prosecutes or defends an action or a counterclaim on a consumer contract or lease." (Citations omitted; emphasis added; internal quotation

to provide room, board and general nursing care to the [patient] for a basic per diem charge." In its complaint, the plaintiff alleges that it agreed to "render care and services to the [patient] and the [d]efendant, as the [responsible] [p]arty, agreed to apply the [patient's] income and assets to pay for such care and services if the [d]efendant had control of or access to the [patient's] income or assets." It alleges further that, pursuant to the agreement, it "rendered care and services to the [patient]"—which it defines as "including but not limited to, long term care, medical care, skilled nursing care, rehabilitation, therapy, room and board, and prescription medication . . . ." Surely, such services are of a "personal" nature.

I am not persuaded by the plaintiff's argument that the contract was not for "personal, family or household purposes" under § 42-150bb because the patient, not the defendant, received the services rendered. The services described in the contract itself, and thus the "service[s] which [are] the subject of the transaction" pursuant to the statute, are of a personal nature, regardless of whom the plaintiff designates as a defendant. Accordingly, I agree with the court's conclusion that the contract at issue is the type of contract for which attorney's fees may be recovered under § 42-150bb.

marks omitted.) *Traystman, Coric & Keramidas, P.C.*
v. *Daigle*, 282 Conn. 418, 429, 922 A.2d 1056 (2007).

The purpose of § 42-150bb is to make attorney's fees
clauses reciprocal in order to bring parity between a
commercial party and a consumer. *Rizzo Pool Co.* v.
*Del Grosso*, 240 Conn. 58, 75, 689 A.2d 1097 (1997).
In *Rizzo Pool Co.*, our Supreme Court examined the
legislative history of the statute, noting that "[i]n 1979,
the Connecticut legislature enacted No. 79-453 of the
1979 Public Acts, entitled 'An Act Concerning Attorney's
Fee Clauses in Consumer Contracts.' " Id., 74.[4] The legis-
lative emphasis on reciprocity, equity, fairness and con-
sumer protection is evident throughout the debate on
the bill. For example, speaking on behalf of the bill,
Senator Alfred Santaniello, Jr., remarked: "This bill
makes attorney's fee clauses reciprocal." (Internal quo-
tation marks omitted.) Id., 75. Representative Richard
D. Tulisano commented: "What [the statute] does is
give some *equity* to the situation." (Emphasis added;
internal quotation marks omitted.) Id. In response to a
remark in opposition to the bill, in which the opponent
argued that the bill took away the parties' freedom of
contract, Senator Salvatore C. DePiano stated: "I think
that most of the time these consumer contracts are
drawn up by the creditor and under the circumstances
many of the consumers are not aware of [the attorney's
fees] provision in the [contract], and therefore, I think
[the consumers] should be protected because . . . if
a creditor brings a lawsuit . . . had he been successful,
he would have collected attorney's fees. I think it's only
fair that we legislate that the consumer can get the

---

[1] The issue in *Rizzo Pool Co.* v. *Del Grosso*, supra, 240 Conn. 73, was
whether the term in § 42-150bb limiting a consumer's award of attorney's
fees to " 'the terms governing the size of the fee for the commercial party' "
incorporated General Statutes § 42-150aa by reference, thereby limiting
attorney's fees awarded to the holder of a contract to 15 percent of the
amount of the judgment. Our Supreme Court answered that question in the
negative. Id., 74.

same protection and therefore be entitled [to] attorney's fees [should the consumer prevail]. I think it's a good consumer bill and I urge its passage . . . ." 22 S. Proc., Pt. 13, 1979 Sess., pp. 4276–77.

I conclude that, as a consumer protection statute, § 42-150bb has a remedial purpose that should be *interpreted broadly* in favor of those persons whom the legislature intended to protect. See, e.g., *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 678, 657 A.2d 1087 (1995) (noting that "[a]s remedial legislation [the Home Improvement Act, General Statutes § 20-418 et seq.] must be afforded a liberal construction in favor of those whom the legislature intended to benefit"); *Cagiva North America, Inc.* v. *Schenk*, 239 Conn. 1, 14, 680 A.2d 964 (1996) (noting that "the Lemon Law [General Statutes §§ 42-179 through 42-186] is a remedial statute that ought to be read broadly in favor of those consumers whom the law is designed to protect").

In the present case, the issue is whether the defendant is a "personal representative" of the buyer. As noted by the majority, the term "personal representative" is not defined in § 42-150bb but is commonly used in various statutes to refer to a person who acts as a custodian or guardian of a person who lacks capacity or one with authority to act on behalf of a decedent. In this instance, however, unlike such statutes as the Uniform Transfer on Death Security Registration Act[5] and the Connecticut Uniform Transfers to Minors Act,[6] the legislature chose

[5] See General Statutes § 45a-468a (5): " 'Personal representative' includes executor, administrator, successor personal representative, special administrator and persons who perform substantially the same function under the law governing their status."

[6] See General Statutes § 45a-557a (12): " 'Personal representative' means an executor, administrator, successor personal representative or temporary administrator of a decedent's estate or person legally authorized to perform substantially the same functions."

not to define the term in a way that limited its application to legal representatives.[7] Evidence of the defendant's authority to make decisions of a personal and medical nature on the patient's behalf was presented to the court by the plaintiff, itself. Before her father could be admitted to the facility, the defendant was required to sign various forms on his behalf as the representative of her father with respect to certain matters affecting her father's well-being and other interests. For example, she was required to sign a document concerning which "heroic measures" could be administered to him, in which she declined cardiopulmonary resuscitation. She was required to sign other documents regarding his medical care and treatment, including an organ and tissue donation form, an admission screening form for medicare as a secondary insurance, an assignment of medicare benefits form and a form consenting to such rehabilitation therapy as may be ordered by his physician. On that same day, she was required to sign various other documents required by the plaintiff, including the admission agreement, a document regarding the resident's responsibilities, his consent to be photographed, his consent to room changes, notifications concerning the privacy act and the patient's bill of rights and other documents. On a date shortly thereafter, as the responsible party and at the plaintiff's request, she authorized the facility to administer an influenza vaccine to her father.[8]

The plaintiff commenced this action against this defendant *precisely because* she was the party who

[7] Compare with statutes that do not define the term, including General Statutes §§ 3-94q (pertaining to personal representative of deceased notary), 20-122 (pertaining to personal representative of deceased dentist), 33-182g (pertaining to personal representative of deceased or legally incompetent shareholder).

[8] I would note that many of the documents that the defendant was required to sign pertain to matters commonly incorporated in a designation of attorney-in-fact or health care surrogate.

signed the forms *that it required* in order for her father to receive care. The plaintiff relied on the defendant's position and authority as the "responsible party" under the agreement that it had required when it initiated the lawsuit against her. It alleged that, by virtue of her authority as the "responsible party," she was liable for her father's outstanding bill, at least insofar as she had control of or access to his income or assets per the admission agreement. The plaintiff failed to prove that the defendant had the requisite control of or access to the patient's assets. As a result, she prevailed in the breach of contract action.[9]

The purpose of § 42-150bb is to bring parity between a commercial party and a consumer who defends successfully an action on a contract prepared by the commercial party. The plaintiff bears full responsibility for placing the defendant in the position of having to defend a breach of contract action by alleging that, as the "responsible party," she was responsible for paying certain outstanding bills by virtue of her authority to act on behalf of the patient. It cannot now maintain that, because *it failed to prove* that she had access to or control of the patient's financial assets, she had *no* authority to act on behalf of the patient and is not entitled to recover the fees she incurred defending that action. Under the facts and circumstances of this case, I would conclude that the defendant was the "personal representative" of the patient buyer for the purposes of the statute and, accordingly, is a "consumer" under

[9] Although the defendant did not have control of or access to her father's assets, she was not relieved of her other obligations under the admission agreement. For example, pursuant to that agreement, the defendant, as the responsible party, was bound to "apply promptly for, or assist the facility as necessary in establishing eligibility or otherwise applying for any applicable [m]edicare or other insurance benefits" and to "provide all information that may be requested" in connection with any application for medicaid assistance. The plaintiff did not allege that the defendant breached the contract in any respect, other than failing to pay the bill.

§ 42-150bb. Because the defendant is a consumer who defended the action successfully, pursuant to terms of the statute, she would be entitled by operation of law to reasonable attorney's fees as provided in the contract. Accordingly, I dissent from part II of the majority opinion.

Because the majority concluded that the defendant was not entitled to attorney's fees, it did not reach the question of whether the fees awarded were reasonable. Because I conclude that the defendant was entitled to reasonable attorney's fees by operation of law as provided in the contract, I will address the plaintiff's argument.

The trial court's memorandum of decision did not go into detail on the issue of the reasonableness of the fee awarded. The court found that the defendant was entitled to "reasonable" attorney's fees pursuant to § 42-150bb and the contract for defending the complaint but not for prosecuting the counterclaim on which she did not prevail. Although the defendant requested $39,000 in fees, the court awarded $36,000 without making any other findings pertaining to the reasonableness of the fees.

The plaintiff objects primarily to the portion of the attorney's fees awarded that were incurred by the defendant's husband, which was the basis for approximately $25,500 of the amount claimed. The itemized bill from the defendant's husband was admitted as a full exhibit at trial, but the plaintiff did not challenge the bill at that time. At oral argument on the motion for counsel fees, the court asked the plaintiff whether it challenged the amount of counsel fees or the reasonableness of the counsel fees claimed, and the court heard the plaintiff's argument. In light of this record, I find the plaintiff's claim that it had no opportunity to challenge the reasonableness of the fees to be unavailing. The plaintiff had at least two such opportunities.

Moreover, the plaintiff failed to seek an articulation from the court as to how it arrived at the $36,000 award. Making every reasonable presumption in favor of upholding the trial court's ruling, the evidence before the court included the itemized bills from which it reasonably could have determined that $3000 was an appropriate deduction for the prosecution of the counterclaim. See *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 681 n.5, 443 A.2d 486 (1982) (itemized list of services, court file and court's own general knowledge could provide evidentiary basis for court to decide amount of reasonable attorney's fees). Although the amount of the award is troubling, I find no basis on which to reverse the court's decision.