DALIA GIEDRIMIENE *v.* GEORGE J.
EMMANUEL, JR., ET AL.
(AC 32937)

DiPentima, C. J., and Lavine and Beach, Js.

Argued January 4—officially released April 24, 2012

*Beverly S. Knapp,* for the cross appellants (defendant Kathy Zdeb et al.).

*Dalia Giedrimiene,* pro se, the cross appellee (plaintiff).

*Opinion*

BEACH, J. The defendants[1] Kathy Zdeb, Michael Calabro and Calabro & Associates, LLC, doing business as Coldwell Banker Calabro, cross appeal[2] from the judgment of the trial court rendered in favor of the self-represented plaintiff, Dalia Giedrimiene, on their counterclaim requesting attorney's fees and costs from the plaintiff in connection with a failed real estate closing. On appeal, the defendants claim that the court erred in declining to award them attorney's fees and costs by concluding that (1) the defendants were not prevailing parties pursuant to the real estate purchase contract, (2) the defendants significantly contributed to the plaintiff's default under a provision of the real estate purchase contract that was inapplicable to the claims alleged, and (3) a dual agency relationship existed and equitable estoppel applied. We affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to the defendants' appeal. On January 11, 2007, the plaintiff, a putative buyer of a one family residence, served an eleven count complaint on: the seller, George J. Emmanuel, Jr.; real estate agents Zdeb and Calabro; the real estate agency for whom Zdeb and Calabro worked, Calabro & Associates, LLC; and mortgage brokers Steve Bysko and Noreast Mortgage Services, LLC (Noreast). On or about March 22, 2006, the plaintiff signed a real estate purchase contract (contract) to purchase for $610,000 a residence owned

[1] The plaintiff filed this action against George J. Emmanuel, Jr.; Kathy Zdeb; Michael Calabro; Calabro & Associates, LLC; Steve Bysko; and Noreast Mortgage Services, LLC. Zdeb, Calabro and Calabro & Associates, LLC, are the only defendants who are parties to this cross appeal. Accordingly, we refer to these three parties, collectively, as the defendants.

[2] As we will discuss, the plaintiff's appeal was dismissed.

by Emmanuel located at 297 Catherine Drive in Rocky Hill. The contract provided for a total deposit of $31,000, $1000 of which was payable at the signing of the contract and $30,000 of which was payable on or before fourteen calendar days after the execution of the contract. It also provided that Calabro & Associates, LLC, was the sole broker in the transaction. The plaintiff, Emmanuel and Calabro & Associates, LLC, via Zdeb as an authorized representative of the latter, also executed a dual agency consent agreement providing that Calabro & Associates, LLC, would represent both the plaintiff and Emmanuel in the purchase and sale of the residence. Pursuant to the real estate purchase contract, the plaintiff was required to secure a mortgage for $579,000 on or before April 18, 2006, which date was extended to May 2, 2006. The plaintiff did not file an application for a mortgage until April 25, 2006, more than one month after entering into the contract. On May 2, 2006, the plaintiff received a formal denial of her mortgage application, which denial was faxed to Zdeb. The plaintiff met with Zdeb and Calabro that day, and upon the plaintiff's request, Zdeb and Calabro obtained from the seller a second extension to May 19, 2006, which extension included the phrase "time is of the essence . . . ." Nonetheless, the date for the closing subsequently was extended to a date in June, 2006.

The plaintiff continued to have difficulty securing financing while Zdeb assured her that her contract was "secure" and insisted that the plaintiff need not speak with the seller because Zdeb was in contact with him every day. At Zdeb's strong insistence, the plaintiff agreed to allow Bysko to begin developing a plan to secure the necessary financing to close the deal. This effort was thwarted by "[t]he plaintiff's unwarranted and unexplained rejection of Bysko's financial package . . . ." On June 23, 2006, Emmanuel's attorney sent a fax to the plaintiff's attorney that "referenced the

plaintiff's alleged 'failure to appear and close' on June 16, declared that the plaintiff was in default under the buy-sell agreement and . . . also requested the release of the $31,000 deposit [to him] and advised that the Catherine Drive property was going back on the market." Additionally, "[w]hile Bysko was diligently pursuing the financial package needed for the plaintiff to close . . . Zdeb was pressuring the plaintiff to enter into an exclusive right to sell [her current home] with [Zdeb's] agency. . . . On July 7, despite [the letter from Emmanuel's attorney] of June 23, Zdeb and Michael Calabro assured the plaintiff that her deposit was safe and that the Calabro agency would be able to effectuate a quick sale of Stonehill [the plaintiff's residence], which would then generate the funds to pay off the line of credit as well as the second mortgage on Catherine Drive . . . ." (Citation omitted.) The plaintiff then left for approximately one month for a European vacation in mid-July. After her return, she met with Calabro on August 29, 2006, inter alia, to request the return of her deposit. "At the meeting Calabro informed the plaintiff that Emmanuel had contracted to sell Catherine Drive to another buyer for a price $60,000 below that offered by the plaintiff, whereupon coarse words were exchanged and anger ensued, prompting Calabro to threaten to call the police if [the plaintiff] didn't leave his office immediately. That evening, the plaintiff was visited by a local police officer. Within two weeks, the plaintiff retained [an] attorney . . . who on January 11, 2007, filed this action."

With respect to the defendants in the present appeal,[3] the plaintiff brought claims for conversion, statutory

[3] The plaintiff also brought a claim against Emmanuel for breach of contract for his failure to return the $31,000 deposit to her, and two claims against Bysko and Noreast alleging a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and negligence in their advice to her and that they were acting in collusion with the Realtors.

theft, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and negligence. The defendants filed an answer; special defenses sounding in comparative negligence, equitable estoppel and waiver; a counterclaim against the plaintiff; and a cross claim against Emmanuel. In the counterclaim, the defendants alleged, inter alia, that under the contract, they were entitled to attorney's fees and costs. By the time of trial, the only claims remaining against the defendants were count five, against Zdeb and Calabro & Associates, LLC, and count nine, against Calabro, which counts sounded in negligence.[4] The plaintiff alleged in those counts that she was provided with improper advice, including that no further extension of the mortgage contingency or closing dates was necessary, and that any information she received from the defendants was tainted by Zdeb's status as a dual agent for the plaintiff and Emmanuel.

Following a trial to the court at which the plaintiff represented herself, the court found in favor of Emmanuel and in favor of Bysko and Noreast. Additionally, the court found that "although, based upon the allegations in her complaint, the plaintiff has sustained her burden of proof against the . . . defendants, the court also finds that said defendants have met their burden and have proven two of their special defenses [contributory negligence and waiver]. Nevertheless, the court further finds that the . . . defendants significantly contributed to the plaintiff's default, [and] therefore, under

---

[4] The first count against Emmanuel for breach of contract and the tenth count against Bysko and Noreast alleging negligence also were operative at trial. Counts two (conversion as to Zdeb and Calabro & Associates, LLC), three (statutory theft as to Zdeb and Calabro & Associates, LLC), four (violation of CUTPA as to Zdeb and Calabro & Associates, LLC), six (conversion as to Calabro), seven (statutory theft as to Calabro) and eight (violation of CUTPA as to Calabro) were withdrawn by the plaintiff before the issues were submitted to the court for final resolution. After the plaintiff had rested, the court granted the motion brought by Bysko and Noreast to dismiss the eleventh count, which alleged as to them a violation of CUTPA.

applicable terms of the buy-sell agreement, are not entitled to an award of attorney's fees and costs." The plaintiff subsequently filed a motion for clarification of the court's memorandum of decision, which motion the court denied. The plaintiff then filed an appeal and the defendants filed a cross appeal as to the court's judgment on their counterclaim. The plaintiff's appeal was dismissed as untimely, and a subsequent motion by the plaintiff for reconsideration was denied. A petition for certification to appeal also was denied by our Supreme Court. See *Giedrimiene* v. *Emmanuel*, 301 Conn. 907, 18 A.3d 589 (2011). The defendants' cross appeal, to which we now turn, is the only action remaining in the case. Additional facts will be set forth as necessary.

I

The defendants claim that the court erred in concluding that they were not entitled to recover attorney's fees and costs pursuant to paragraph six of the contract. Specifically, the defendants argue that the court's interpretation of "prevailing party" is contrary to controlling authority and that the clear and unambiguous language of paragraph six requires that they be awarded attorney's fees and costs. We agree with the defendants that the court erred in its interpretation of the term "prevailing party" but decline to reverse on this ground because we agree with the court that other provisions of the contract are applicable and preclude recovery of attorney's fees and costs by the defendants.

The defendants invoked paragraph six of the contract in its counterclaim seeking attorney's fees and costs. Paragraph six of the contract provides in relevant part: "In case of a dispute, listing Broker shall continue to hold all deposits until the parties' rights to the deposits are finally adjudicated or agreed upon. If listing Broker initiates or is made a party in any action arising out of

a dispute between the parties over deposits, then any and all costs incurred by listing Broker (including, without limitation, attorneys' fees and court costs) shall be paid by the nonprevailing party." The court found: "As to paragraph six, given the finding by this court that the . . . defendants must share the blame with the plaintiff for the failed closing, said defendants are clearly not 'the prevailing party' . . . ."

Our review of this claim requires us to interpret the language of the contract. "The standard of review for the issue of contract interpretation is well established. When . . . there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Accordingly, our review is plenary." (Internal quotation marks omitted.) *Genua* v. *Logan*, 118 Conn. App. 270, 273, 982 A.2d 1125 (2009). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The defendants argue that the requirement in paragraph six that the nonprevailing party pay costs is not conditioned expressly upon that party being free from blame with regard to a dispute over deposits. They further contend that the court's interpretation of the term "prevailing party" as one who does not share blame is contrary to controlling authority. We agree. Our Supreme Court has stated: "[P]revailing party has been defined as [a] party in whose favor a judgment is

rendered, regardless of the amount of damages awarded
. . . ." (Internal quotation marks omitted.) *Wallerstein*
v. *Stew Leonard's Dairy*, 258 Conn. 299, 303, 780 A.2d
916 (2001). In the present case, although the court found
in favor of the plaintiff as to the defendants' counter-
claim, the court found in favor of the defendants on
the two counts of the plaintiff's complaint remaining
against the defendants. Judgment was rendered in favor
of the defendants as to the plaintiff's complaint. Accord-
ingly, the court erred in concluding that the defendants
were not prevailing parties. Because we determine that
consideration of other clauses of the contract results
in the conclusion that the defendants may not recover
attorney's fees and costs, as we discuss in part II of this
opinion, however, this error does not require reversal.

II

The defendants claim that the court erred in conclud-
ing that attorney's fees were to be disallowed on the
ground that the defendants significantly contributed to
the plaintiff's default pursuant to paragraph twelve of
the contract. They claim that paragraph twelve was not
applicable to the claims alleged, and, alternatively, that
there was no causal connection between the plaintiff's
default and the conduct in question. We disagree.

Paragraph twelve of the contract provides in relevant
part: "If a legal action is brought to enforce any provi-
sion of the Contract, the prevailing party, including a
broker who is made party to such action and who has
not significantly contributed to the default, shall be
entitled to court costs and attorneys' fees." The court
found: "As to the quoted portion of the twelfth para-
graph, this court, for reasons previously set forth herein,
has found that the conduct of Zdeb, as one who owed
a fiduciary duty to the plaintiff as well as to Emmanuel,
'significantly contributed' to the plaintiff's default.

Therefore, pursuant to the plain language of said paragraph this court finds that the . . . defendants are precluded from the recovery of *any* attorney's fees and costs from the plaintiff." (Emphasis in original.) The court had previously discussed Zdeb's conduct and had concluded, inter alia: "[T]he conduct of Zdeb in not disclosing to the plaintiff the decision to place Catherine Drive on the market while, at the same time, pressuring the plaintiff to sign the exclusive listing agreement to sell Stonehill, thus providing the plaintiff with the false impression that all was well, induced the plaintiff to leave for Europe, thereby risking what actually occurred while she was gone, i.e., the loss of Catherine Drive."

Our review of this claim requires us to interpret the language of the contract. As previously set forth, the standard of review for contract interpretation, where there is definitive contract language, is plenary. *Genua* v. *Logan*, supra, 118 Conn. App. 273. Where the facts are challenged, we apply the clearly erroneous standard of review, and where the legal conclusions are challenged, we determine whether they are legally and logically correct. See *Pandolphe's Auto Parts, Inc.* v. *Manchester*, supra, 181 Conn. 221–22.

The defendants argue that paragraph twelve of the contract is not applicable because the express language of that paragraph provides that it applies only to an action brought to enforce a contractual provision, and the defendants have been sued regarding a dispute over the deposit, which suit is properly governed only by paragraph six of the contract.[5] "The contract must be

---

[5] As the plaintiff asserts, paragraph six addresses the mechanics of deposit procedures, including the timing of initial deposits and the release of deposits, as well as obligations of the broker to hold deposits. According to that paragraph, "[i]n case of a dispute, listing Broker shall continue to hold all deposits until the parties' rights to the deposits are finally adjudicated or agreed upon." If the listing broker is sued because he or she is holding the deposit, then, according to paragraph six, the listing broker is entitled to attorney's fees and costs from the nonprevailing party.

viewed in its entirety, with each provision read in light of the other provisions . . . ." (Internal quotation marks omitted.) *Electric Cable Compounds, Inc.* v. *Seymour*, 95 Conn. App. 523, 529, 897 A.2d 146 (2006). Paragraph five of the contract provides in relevant part: "If either party so terminates this Contract, then all deposits will be returned to Buyer, and, except as provided in paragraph 17, the obligations of the parties under this Contract shall end." Paragraph twelve applies "[i]f a legal action is brought to enforce any provision of the Contract . . . ." The plaintiff has brought a legal action as a buyer to recover her deposit, which return is provided for by paragraph five. Accordingly, paragraph twelve applies, and thus in order for the defendants to recover court costs and attorney's fees, they must have "not significantly contributed to the default . . . ."

The court specifically concluded that "the . . . defendants significantly contributed to the plaintiff's default, [and] therefore, under applicable terms of the buy-sell agreement, are not entitled to an award of attorney's fees and costs." The court found: "[I]nstead of assisting the plaintiff in obtaining a refund of her deposit pursuant to the mortgage contingency clause, Zdeb assured the plaintiff that the deposit was safe." It also found that Zdeb "prevail[ed] upon the plaintiff on July

In the present case, the defendants were not sued only because they were holding the deposit in escrow. Rather, the plaintiff alleged that the defendants had engaged in malfeasance and negligence. Accordingly, paragraph twelve, which provides that "the prevailing party, including a broker who is made party to such action and who has not significantly contributed to the default, shall be entitled to court costs and attorneys' fees," applies in addition to and in qualification of paragraph six. In the context of the whole contract, which evidences the intent of the parties, the language of paragraph twelve modifies the ability of a broker to recover costs and attorney's fees. As we will discuss, the court specifically concluded that the defendants significantly contributed to the default, and, accordingly, pursuant to the language of the contract, they are not entitled to attorney's fees.

7, weeks after the second cancelled closing, to enter into exclusive listing to sell Stonehill, after providing the plaintiff with her self-promoting letter that pledged to sell the house as soon as possible at the highest possible price. Once the exclusive listing agreement was signed, the plaintiff could have and did reasonably assume, as a result of Zdeb's assurance that any financial problems . . . would be resolved . . . . This caused the plaintiff to harbor the mistaken belief that she was free to sojourn to Europe . . . ." The court also explicitly stated: "Unfortunately, Zdeb let her aggressive business practices (such as her self-promoting literature and reassuring statements to the plaintiff that included: 'trust me' [and] 'people listen to me' . . .) take control, while ignoring the realities of the situation, thereby significantly contributing to the failed closing and the resultant financial consequences to all involved." These findings of fact were not clearly erroneous. Accordingly, paragraph twelve is applicable to the plaintiff's action and precludes recovery of attorney's fees and costs by the defendants.

Alternatively, the defendants argue that even if paragraph twelve applies to the present case, there was no evidence of a causal connection to support the court's conclusion that they significantly contributed to the plaintiff's default. We do not agree in light of the factual findings that we have listed previously in support of the court's conclusion that the defendants significantly contributed to the plaintiff's default.

### III

The defendants also claim that the court erred in denying to them attorney's fees and costs on the ground of a dual agency relationship between Zdeb, the plaintiff and Emmanuel. Specifically, the defendants claim that the dual agency consent agreement complied with General Statutes § 20-325g,[6] and, thus, the court erred in

[6] General Statutes § 20-325g provides in relevant part: "There shall be a conclusive presumption that a person has given informed consent to a dual

finding that the relationship constituted an improper conflict of interest. In light of our conclusion that a reading of the contract as a whole explicitly precludes recovery of attorney's fees and costs by the defendants, any error by the court regarding dual agency is not dispositive. Although some of the factual findings by the court with regard to its conclusion that the defendants significantly contributed to the plaintiff's default were premised upon its determination that the dual agency relationship created an irreconcilable conflict of interest, there were several factual findings independent of this ground. The factual findings we discussed in part II of this opinion, for example, including Zdeb's aggressive business practices and assurances, were not based on a dual agency relationship, and, as discussed previously, were not clearly erroneous.

Similarly, any error made by the court in its determination that the defendants were equitably estopped from claiming benefits provided by the contract does not alter our conclusion that the plain terms of the contract preclude the defendants from recovering attorney's fees and costs. Accordingly, we decline to address this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

agency relationship with a real estate broker if that person executes a written consent . . . prior to executing any contract or agreement for the purchase, sale or lease of real estate . . . ."